### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NAPOLEON GONZALEZ, a/k/a<br>"GUILLERMO GONZALEZ" | No. 2:21-cr-00117-JAW |

### GOVERNMENT'S SENTENCING MEMORANDUM CONCERNING RESTITUTION

The government recommends that this Court order restitution in the amount of $176,714.00 to the Social Security Administration ("SSA"). This amount represents the total amount of Retirement and Survivors' Insurance ("RSI") Benefits paid to the identity of Guillermo Gonzalez, the defendant's deceased brother, after the defendant filed an application for benefits in his name. The agency's determination of its loss amount is consistent with the provisions of 42 U.S.C. § 405(u)(3), and using that determination is appropriate pursuant to relevant case law. This Court should order this restitution because it is mandatory under Count 1, and because the factors warrant ordering discretionary restitution under Count 4.

### Background

On July 14, 2021, a six-count indictment was filed in U.S. District Court in Bangor, ME, charging the defendant with one count of identity left, possession of a means of identification of another person, 18 U.S.C. § 1028(a)(7); two counts of passport fraud, 18 U.S.C. § 1542; one count of Social Security fraud, concealment of material information, 42 U.S.C. § 408(a)(4); one count of use of a Social Security number obtained on the basis of false information, 42 U.S.C. § 408(a)(7)(A); and one count of mail fraud, 18 U.S.C. § 1341 (ECF No. 1). On August 18, 2023, following a two-day trial, a

jury returned a verdict of guilty on all six counts (ECF No. 93). Following the issuance of the revised PSR (ECF No. 113) and a presentencing conference (ECF No. 116), the government submits this memorandum in support of the agency's determination of the amount of restitution this Court should impose upon the defendant.

## Argument

### A) An order of restitution to the SSA is appropriate.

1) Mandatory restitution is warranted on the basis of Count 1

Pursuant to 18 U.S.C. § 3663A(c)(1)(B), restitution shall be ordered when a defendant is convicted of an offense in which an identifiable victim or victims has suffered a pecuniary loss. Accordingly, this Court must order that the defendant pay any restitution that may be appropriate with respect to Count 1. Though the PSR analyzed the loss to SSA under the rubric of Counts 4 and 5, charges pertaining to forms of Social Security fraud (PSR ¶ 15), the government submits that the conduct of which the defendant was convicted in Count 1 was a proximate cause of SSA's loss, rendering it an identifiable victim to which restitution of that loss is appropriate. *See* 18 U.S.C. § 3771(e)(2)(A) (victim is "a person directly and proximately harmed as a result of the commission of a Federal offense").

Loss amounts incorporated into an order of restitution requires a causal nexus; first, restitution should not be ordered as to loss which would have occurred regardless of the defendant's conduct. *United States v. Vaknin,* 112 F.3d 579, 589 (1st Cir. 1997) (overruled on other grounds).[1] Second, restitution should not be ordered if the conduct

---

[1] As this Court has observed, "[s]ubject to certain amendments to the VWPA that apply in cases involving a 'scheme, conspiracy, or plan,' *Vaknin* remains good law." *United States v. Berk,* 666 F. Supp. 2d 182, 187 (D. Me. 2009), as amended (Oct. 29, 2009) (citing *United States v. Cutter,* 313 F.3d 1, 7 (1st Cir. 2002)).

2

underlying the offense of conviction is too far removed, either factually or temporally, from the loss. *Id*. Ultimately, "the government must show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal nexus between the conduct and the loss is not too attenuated (either factually or temporally)." *Id*. at 590. In practical terms, the inquiry into proximate cause asks whether the loss "'has a sufficiently close connection to the conduct' at issue." *United States v. Chin*, 965 F.3d 41, 60 (1st Cir. 2020) (*quoting Robers v. United States*, 572 U.S. 639, 645 (2014)). Put another way, the question is whether the loss is "within the reasonably foreseeable risks of harm created by the defendant's conduct." *United States v. Kearney*, 672 F.3d 81, 96 (1st Cir. 2012) (alteration omitted) (*quoting Staelens v. Dobert*, 318 F.3d 77, 79 (1st Cir. 2003)).

Count 1 of the Indictment charges that the defendant possessed a means of identification of another person from an unknown date, but no later than about September 10, 2020 (ECF No. 1). It further charges, in relevant part, that the defendant possessed a Social Security number ending in x3188, knowing that the means of identification belonged to another actual person, with the intent to commit Social Security fraud, in violation of 42 U.S.C. §§ 408(a)(4) and (7)(A) (*id*.). Count 4 of the Indictment charges a violation of 42 U.S.C. § 408(a)(4), specifically, that the defendant intentionally concealed his true identity, and the fact that he was receiving RSI benefits under his true identity, when applying for benefits under the identity of Guillermo Gonzalez (*id*. at 3).

Possession of the Social Security number ending in x3188, assigned to Guillermo Gonzalez, was a necessary instrument to the offense charged in Count 4, and the defendant was further convicted of possessing it with intent to commit this offense. *See*

3

*United States v. Mathew*, 916 F.3d 510, 519 (5th Cir. 2019) ("Because *Mathew* was convicted of knowing possession of HICNs [Health Insurance Claim Numbers] with intent to unlawfully use them, [it was reasonable foreseeable that Medicare would suffer losses and] an order of restitution was appropriate."). As with HICNs in *Mathew*, here, the "very purpose" of an SSN "is to identify an individual" for purposes of programs administered by SSA (*see* ECF No. 117 at 23), so it is unsurprising Guillermo's SSN would be used for purposes of perpetrating Social Security fraud. *See id.* Similarly, the Seventh Circuit has concluded that the government was a victim of an offense under 18 U.S.C. § 1028(a)(7) where the defendant schemed to steal names and Social Security numbers ("SSN") from individuals to mislead and steal money from the government. *See United States v. Hill*, 683 F.3d 867, 870 (7th Cir. 2012). Though the defendant here stole only one name and used it to obtain an SSN, the same rationale should apply.

It is true that the time frame charged in the indictment is relevant to whether a loss amount is subject to restitution. *See, e.g., Mathew*, 916 F.3d at 518 (5th Cir. 2019) (declining to find proximate causation for losses occurring before date of conduct of which defendant was convicted); *United States v. Hayes*, 32 F.3d 171, 172 (5th Cir. 1994) (defendant pled guilty to indictment charging with mere possession on one day, not with conduct or a scheme that resulted in losses to any victims); *United States v. Mancillas*, 172 F.3d 341, 342-43 (5th Cir. 1999) (passing fraudulent check before date alleged in indictment could not form basis of restitution award). Here, the Indictment in Count 1 charges from an unknown date, but no later than about September 10, 2020 (ECF No. 1). But the proof at trial, as recognized in the PSR, was that the defendant obtained the SSN ending in x3188 in Guillermo's name in 1981 (PSR ¶ 10). Moreover, the fact that the jury convicted the defendant of Count 4, charging conduct from 2001 through 2020

4

which necessarily required possession of SSN x3188, effectively cabins the conduct in Count 1 to no later than 2001. Thus, the dates in Count 1 are consistent with the loss amounts experienced by SSA, and restitution on this basis is appropriate.

      2) <u>Discretionary restitution is warranted on the basis of Count 4</u>

Regardless, even if this Court determines that the defendant's conduct with respect to Count 1 is not a sufficiently proximate cause of the loss to SSA's programs, restitution remains warranted as a discretionary matter within the ambit of Count 4, under 18 U.S.C. § 3663.

Pursuant to 42 U.S.C. § 408(b)(1), a Court "may order, in addition to or in lieu of any other penalty authorized by law, that the defendant make restitution to the Commissioner of Social Security, in any case in which such offense results in the Commissioner of Social Security making a benefit payment that should not have been made…". Sections 3612, 3663, and 3664 of Title 18 shall apply with respect to the issuance and enforcement of orders of restitution under this subsection. 42 U.S.C. § 408(b)(2). When determining whether to order restitution, 18 U.S.C. § 3663(a)(1)(B) directs the Court to consider (I) the amount of the loss sustained by each victim as a result of the offense; and (II) the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate. The Government submits that restitution is warranted based on these factors.

      i)   <u>Restitution should be ordered in the full amount of a victim's loss</u>

"In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). This

5

provision, like all others in 18 U.S.C.A. § 3664, applies to 18 U.S.C. §§ 3663A (mandatory restitution) and 3663 (discretionary restitution) alike. *See* 18 U.S.C.A. § 3556 ("The procedures under section 3664 shall apply to all orders of restitution under this section.")

Interpreting this authority, the Fourth, Sixth, and Seventh Circuits, have found that, if a court determines discretionary restitution is appropriate, it should be ordered in the full amount of the victim's loss. As explained by the Sixth Circuit, "[c]ourts consider the financial circumstances of the defendant in deciding whether to order restitution [under Section 3663(a)(1)(B)(i)(II) of the VWPA] and in setting the defendant's payment schedule, but not in setting the total amount of restitution due to the victims [under Section 3664(f)(1)(A)." *United States v. Sizemore*, 850 F.3d 821, 827 (6th Cir. 2017); *see also United States v. Diaz*, 865 F.3d 168, 180-81 (4th Cir. 2017); *United States v. Day*, 418 F.3d 746, 755-57 (7th Cir. 2005); *accord United States v. Leahy*, 438 F.3d 328, 337-38 (3d Cir. 2006) ("[R]estitution is authorized as a matter of course 'in the full amount of each victim's losses.'") (citing 18 U.S.C. § 3664(f)(1)(A)). The D.C. Circuit has taken a contrary view, rejecting this approach, and concluding 18 U.S.C. §§ 3663(a)(1)(B)(i)(II) and 3664(f)(1)(A) can be read together to permit courts to exercise discretion in the amount of restitution. *See United States v. Williams*, 353 F. Supp. 3d 14, 26-27 (D.D.C. 2019).

While the First Circuit has not yet directly addressed this point, at least one district court in this circuit has followed the majority approach over that of the D.C. Circuit. *See United States v. Coleman*, No. CR 19-10113-FDS, 2023 WL 2541089, at *2 (D. Mass. Mar. 15, 2023) (finding approach by Fourth, Sixth, and Seventh Circuits more consistent with the statutory text) (appeal filed, 1st Cir. Mar. 31, 2023). The government

suggests this is the better view. However, the government also submits that this Court need not ultimately reach this issue, as an order of restitution in the full amount of the victim agency's loss is appropriate.

          ii)   Restitution in the full amount of SSA's loss is appropriate in this matter

Ordering the defendant to make restitution to with respect to Count 4 would be a component of an appropriate, just sentence. Restitution is a criminal penalty meant to have deterrent and rehabilitative effects. *United States v. Savoie*, 985 F.2d 612, 619 (1st Cir. 1993). It is also a means by which a defendant can restore ill-gotten gains to the victim of a crime. *United States v. Leahy*, 438 F.3d 328, 333 (3d Cir. 2006). Requiring the defendant to repay the funds he received by fraud is an integral part of an appropriate sentence. In deciding whether to impose discretionary restitution, the court must consider not only the harm to the victim(s), but also the defendant's present and future ability to pay the restitution and such other factors as the court deems appropriate. 18 U.S.C. § 3663(a)(1)(B).

Here, in addition to the benefits he received under his original identity as Napoleon,[2] under SSN x4546, the defendant received an additional $176,714 under the identity of Guillermo, SSN x3188. Though Social Security fraud presents a harm that is most salient in the aggregate rather than any one case, this nevertheless represents a substantial loss caused by a single individual over the course of nearly two decades. Moreover, the significant sum of money the defendant received under this own identity, not counting money received from other sources, belies any notion that this was based

---

[2] From his application date in September 1999 through February 2020, the date benefits paid to Guillermo ceased, the defendant received $207,744 in benefits to Napoleon. *See* Attachment 3.

upon a perceived financial need. Requiring the defendant to repay his ill-gotten funds would be a component of a just sentence.

Perhaps most saliently, the defendant appears to have considerable ability to repay this loss. Despite the fact that the defendant did not provide a Net Worth/Cash flow form or a release to run his credit history during the PSR process, the information available to the US Probation Office indicates that the defendant has an estimated total monthly income of $2,972, with a substantial positive monthly cash flow of $1,863 (PSR ¶ 66). The defendant further reported no liabilities (*id.*), rendering no apparent obstacles to making restitution payments from his monthly cash flow. Under these circumstances, an order of restitution is entirely appropriate. This is particularly so considering that even a limited present capacity to pay would not preclude an order of restitution. *See Kavanagh v. United States*, No. CIV. A. 93-12819-RCL, 1994 WL 500703, at *6 (D. Mass. June 1, 1994) ("Moreover, a defendant's financial condition is only one of several factors which the judge must consider and there is no requirement of a current, or even a definite, ability to pay.") (citing *United States v. Lombardi*, 5 F.3d 568 (1st Cir. 1993), (superseded by statute on other grounds, as stated in *United States v. Martin*, 363 F.3d 25, 43 n.32 (1st Cir. 2004)).

### B) This Court should accept SSA's determination that its loss in this matter was $176,714

It is the government's burden to establish the amount of the victim's losses by preponderant evidence. *United States v. Cardozo*, 68 F.4th 725, 733 (1st Cir. 2023) (citing 18 U.S.C. § 3664(e)). But this burden is not heavy: "[a]s long as the court's order reasonably responds to some reliable evidence, no more is exigible." *United States v. Naphaeng*, 906 F.3d 173, 180 (1st Cir. 2018) (alteration in original) (quoting *United*

8

*States v. Sánchez-Maldonado*, 737 F.3d 826, 828 (1st Cir. 2013)). "The law cannot be blind to the fact that criminals rarely keep detailed records of their lawless dealings, totaling up every column and accounting for every misbegotten dollar." *United States v. Savoie*, 985 F.2d at 617. "Hence, the preponderance standard must be applied in a practical, common-sense way … [s]o long as the basis for reasonable approximation is at hand, difficulties in achieving exact measurements will not preclude a trial court from ordering restitution." *Id.*; *see also United States v. Naphaeng*, 906 F.3d 173, 181–82 (1st Cir. 2018) ("We readily acknowledge that a restitution order must entail more than a mere guess or a bald approximation of actual loss. But the calculation of a restitution order does not demand metaphysical certainty.") (internal citation omitted). "[R]ather than requiring great precision in fixing the amount of restitution due Congress visualized the VWPA as 'authoriz[ing] the court to reach an expeditious, reasonable determination of appropriate restitution by resolving uncertainties with a view towards achieving fairness to the victim.'" *Vaknin*, 112 F.3d at 587 (citing 1982 U.S.C.C.A.N. at 2537).

In a case "where a defendant's claims were demonstrably rife with fraud—a sentencing court may use the face value of the claims as a starting point in computing loss." *United States v. Alphas*, 785 F.3d 775, 784 (1st Cir. 2015) (superseded by rule on other grounds, as stated in *United States v. Carrasquillo-Vilches*, 33 F.4th 36, 42 (1st Cir. 2022) (explaining *Alphas* applied definition of "intended loss" prior to 2015 guideline amendments)). "The burden of production will then shift to the defendant, who must offer evidence to show (if possible) what amounts represent legitimate claims." *Id*. "Where … the government has made a prima facie showing of a victim's actual loss through competent evidence, a defendant must do more than speculate about

9

the possibility of mitigation in order to obtain an offset." *United States v. Padilla-Galarza*, 990 F.3d 60, 93 (1st Cir. 2021) (citing *United States v. Dickerson*, 909 F.3d 118, 129-30 (5th Cir. 2018) ("The Government bears the burden to establish amounts for restitution and forfeiture, at which point the burden shifts to the defendant to prove the inaccuracy of the loss calculation."); *United States v. Steele*, 897 F.3d 606, 613 (4th Cir. 2018) (same)). Rather, the defendant "must, at a minimum, point to evidence adequate to support a finding of a proposed offset in a specific amount." *Id.* (citing *United States v. Flete-Garcia*, 925 F.3d 17, 38 (1st Cir. 2019); *United States v. González-Calderón*, 920 F.3d 83, 86 (1st Cir. 2019)).

The Social Security Act directs the agency to redetermine the entitlement of individuals to monthly insurance benefits – including RSI – if there is reason to believe that fraud or similar fault[3] was involved in the application of the individual for such benefits. 42 U.S.C. § 405(u)(1)(A). When redetermining entitlement in this fashion, if

> the Commissioner of Social Security determines that there is insufficient evidence to support such entitlement, the Commissioner of Social Security may terminate such entitlement and may treat benefits paid on the basis of such insufficient evidence as overpayments.

*Id.* § 405(u)(3). SSA's regulations allow for reopening a decision awarding benefits at any time if it is incorrect because the beneficiary was convicted of a crime that affected their right to receive benefits. 20 C.F.R. § 404.988.

Here, the defendant first applied for RSI under his original identity of Napoleon in September 1999 (*See Attachment 1*). During this application, the defendant indicated that he reviewed his earnings and found there were discrepancies (*id.* at 6). A report of

---

[3] "Similar fault" entails a knowingly-made incorrect or incomplete statement that is material to the determination of entitlement, or knowing concealment of material information. 42 U.S.C. § 405(u)(2).

contact by the person taking his application explained that the defendant "submitted proof of earnings which were not yet posted to his earnings record because he had worked with the name of Guillermo Gonzalez. Upon questioning he alleged that when his maternal grandfather died he assumed his name in his memory." (*id.* at 7). After obtaining evidence to corroborate the name of the defendant's grandfather, the employee determined that "based on the evidence submitted by Mr. Gonzalez and traditional values of Puerto Rico it is credible that he did assume the name of his grandfather and reported wages are his." (*id.*). Assistant District Manager Jodie Karam testified at trial that, based on this, these wages would have been added to Napoleon Gonzalez's record (ECF No. 117 at 47).

Later, in February 2021, the defendant presented to SSA as Guillermo Gonzalez, to file an application for RSI under that identity and SSN x3188 (*see* Attachment 2). During this application, the defendant denied filing a prior application for benefits, and failed to identify a cross reference SSN (*id.* at 2). When asked about his earnings, the defendant stated that his wage record was discussed with him and to the best of his knowledge, it was correct as posted (*id.* at 6). ADM Karam testified that, if the defendant had truthfully answered that he'd previously filed an application for benefits, SSA would have been able to establish that he was one person with two records, and it would have cross-referenced these records (ECF No. 117 at 50-51).

When reviewing the earnings records for Napoleon and Guillermo Gonzalez, ADM Karam observed that both records reflect identical earnings across eight different years (ECF No. 117 at 54-55). Reading the applications for RSI for Napoleon and Guillermo together, it appears that the defendant had earnings he earned working as Guillermo added to Napoleon's record, while retaining them and confirming them to be

11

accurate when he later applied for RSI as Guillermo. Notably, however, the report of contact in Napoleon's application does not specify which years the Guillermo earnings were in, and not every year of earnings for Napoleon and Guillermo are identical. It is likely that years with identical earnings represent years in which Guillermo had earnings and Napoleon did not. However, it remains unclear is whether Guillermo's earnings from other years were added to existing earnings already on Napoleon's record, and if so, for which years.

Responsibility for this ambiguity lies with the defendant. When the defendant filed Napoleon's application, his actions in adding Guillermo's earnings to this record would have been unlikely to generate an overpayment, as he presumably was responsible for the earnings on both Napoleon's and Guillermo's records. However, as soon as the Guillermo identity became eligible for RSI benefits, the defendant filed a second application under that identity. Therein, he failed to disclose that he had previously filed an application under his original identity as Napoleon, much less that he had already transferred some, if not all, of his earnings under the name "Guillermo" to that identity. Quite the contrary, the defendant confirmed that the record of Guillermo's earnings was accurate without further commentary. As ADM Karam explained in her testimony, if the defendant had truthfully admitted to previously filing an application under the name Napoleon, the SSNs for both identities would have been cross-referenced. This would have provided an opportunity for the person taking the Guillermo application to sort out whether there were any earnings under the Guillermo record that were not already accounted for under the Napoleon record, to ensure the defendant received credit for all the work he performed in calculating his benefits. But

12

there was no such inquiry because the defendant falsely stated that he had not filed any previous applications.

All benefits paid to the Guillermo record were predicated on a false statement during the application process. But for the defendant's false statement, the Napoleon and Guillermo records would have been cross-linked, and the defendant would have received only a single monthly payment under one identity. Now that this false statement has come to light more than 20 years later, SSA has insufficient information to determine whether the Guillermo record has any earnings not already accounted for on the Napoleon record. In the absence of such information, it properly treated all payments to Guillermo as a loss due to fraud, and an overpayment on Napoleon's record. *See* 42 U.S.C. § 405(u)(3).

This loss amount is reasonable, as the defendant already received credit for at least some, if not all, of his earnings as Guillermo under Napoleon's record. *See Savoie*, 985 F.2d at 617. Notably, any earnings that might not have been copied from Guillermo's record to Napoleon's record would be expected to have a marginal impact on the benefits paid to Napoleon as a single account relative to being split into a second Guillermo record (*see* ECF No. 117 at 56-59) (discussing diminishing returns of increasing earnings on a single record). And, at bottom, it is not apparent how SSA could resolve the ambiguity. *See United States v. Shamo*, No. 2:16CR631DAK, 2020 WL 7027730, at *2 (D. Utah Nov. 30, 2020) ("[I]t is apparent that R.R. has done the best itemized estimation she could do under the circumstances. … The court concludes that R.R.'s spreadsheet is a reasonable way to determine and resolve the uncertainties in connection with her loss 'with a view toward achieving fairness to the victim.'") (citing *United States v. Davis*, 60 F.3d 1479, 1485 (10th Cir. 1995).)

13

Having set forth a rational basis for the loss to the agency and an appropriate amount of restitution, the burden now shifts to the defendant to show that the agency's loss calculation fails to account for unique earnings under the Guillermo record that might serve as an offset. *See Padilla-Galarza*, 990 F.3d at 93; *Alphas*, 785 F.3d at 784; *Dickerson*, 909 F.3d at 129-30. Indeed, the defendant is the one best-positioned to augment any factual deficiency or correct any such error. *United States v. Bikundi*, 926 F.3d 761, 791–92 (D.C. Cir. 2019) ("Due to the pervasive fraud, Florence and Michael were 'in a much better position than the government to ascertain the particular facts at issue[.]'"). If the defendant takes the position that his record under the name Napoleon, SSN x4546, fails to account for all of his earnings, he should provide evidence to substantiate a full accounting of his earnings. Only if the defendant can show that his combined earnings under both identities would result in higher earnings than those reflected under the Napoleon record, can the defendant identify a basis upon which his payments under that identity should have been higher. Absent such a showing, there is no basis upon which to offset the agency's loss amount based on benefits paid to the Guillermo identity. *See Bikundi*, 926 F.3d at 791 ("[I]f the defendant does not produce evidence of legitimate services, the prosecution … may rely on the existence of a pervasive fraud to argue that all services were infected by fraud in some way, and therefore that payments for all services represent loss").

The First Circuit has recently rejected an argument that a district court erred in accepting the face value of a loss of Social Security benefits. *See United States v. Rivera-Ortiz*, 14 F.4th 91, 103 (1st Cir. 2021). As the district court reasoned, the defendant "had an obligation to report … and because he didn't … everything is basically an illegal amount he's receiving since that outset. … [H]ad he reported … [his benefits] could have

14

been recalculated, but because he didn't he's getting the benefit of everything." *Id.* The First Circuit explained that with this reasonable acceptance of the face value of the benefits as the initial basis for the loss calculation, it then fell to the defendant to establish which portion of those amounts "represent[ed] legitimate claims." *Id.* (citing *Alphas*, 785 F.3d at 784). The First Circuit further found reasonable basis for the district court to conclude that, absent the defendant's fraud, his application for SSA benefits would not have been approved at all, and that this served as a modicum of reliable evidence upon which the district court could rely in determining an appropriate amount of restitution. *Id.* at 105 (citing *Naphaeng*, 906 F.3d at 179).

The facts in *Rivera-Ortiz* are similar to those here. But for the defendant's fraud, SSA never would have approved an application for RSI under Guillermo's name. This serves as a modicum of evidence upon which this Court can order restitution in the amount of benefits paid to Guillermo. Any detriment the defendant may experience from legitimate earnings on Guillermo's record that were not transferred to Napoleon's record is the result of his failure to answer questions honestly during the application process, which would have provided an opportunity to ensure he received credit for all his earnings. This Court should decline to extend him any benefit of such ambiguity.

## V. CONCLUSION

The Government respectfully requests that the Court order restitution in the amount of $176,714 to the Social Security Administration.

Dated at Portland, Maine on February 20, 2024.

                                                DARCIE N. MCELWEE
UNITED STATES ATTORNEY

*/s/ Jeanne D. Semivan*
Special Assistant U.S. Attorney
U.S. Attorney's Office
100 Middle Street, East Tower
Portland, ME  04101
(207) 780-3257
jeanne.semivan@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2024, I electronically filed the above *Government's Restitution Memorandum* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Harris Mattson, Esq.
Harris@bangorcriminallaw.com

                                                */s/ Jeanne D. Semivan*
Special Assistant U.S. Attorney